**DIOCESE OF SAMOA PAGO PAGO, Plaintiff**

**v.**

**KMST, Inc. and JUM YONG JUNG, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 18-90
CA No. 23-90

May 1, 1990

Before REES, Associate Justice, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
For Defendants, Charles V. Ala'ilima

This is an action for eviction. The complaint invoked the provisions of A.S.C.A. §§ 43.1401 et seq., for a summary proceeding and also contained a prayer for such relief as should prove to be justified on the pleadings and the evidence.

The principal feature of the summary eviction procedure is that trial shall be held within ten days of service of the summons, "unless extended by the court." In the present case the ten-day period would have expired on a Sunday, so trial was set for the following day, March 5, 1990.

At the trial both plaintiff and defendants were represented by counsel. Counsel for defendant filed an answer. The answer alleged that defendants had in fact complied with all their obligations under the lease and also raised certain technical defenses (e.g., the plaintiff Archdiocese "has no capacity to sue."). The answer did not allege that plaintiff had failed to comply with the statutory prerequisites for summary eviction. Nor was this defense raised at trial until after both the plaintiff and the defendant had rested.

The evidence taken at trial showed that defendants had been seriously and chronically deficient in making rental payments; that in March and April of 1989 plaintiff had engaged an attorney to commence eviction proceedings; that upon being threatened with eviction the defendants had paid the entire amount of overdue rent; that about six months later, in October of 1989, the defendants had again failed to make a rental payment when due; and that the rent had been at least one month overdue at all times between October 1989 and March 5, 1990, the date of trial.

Defendant Jum (who is in physical possession of the premises and who is an officer of the other defendant, KMST) did not disagree with plaintiff about the amounts paid and the dates on which they were paid. Instead he testified about his financial and logistical difficulties; about a conversation with the Bishop from which he, Jum, had derived some hope of an eventual settlement; and about various improvements he had made to the building.

21

The principal defense urged by counsel for the defendant in his closing argument was that defendant should be entitled to a credit against rentals for three months at the beginning of the lease term during which the premises had been unfit for their intended use. The Court rejected this argument on the ground that the lease agreement clearly reflected the parties' understanding that the building would need substantial repairs and improvements in order to make it fit for defendant's intended use; and that the agreement had specifically provided that the defendant lessee would be responsible for fitting the building for its intended use and should pay rent during the time this was being done.

The Court also noted that defendants, when threatened with eviction in April of 1989, had paid the entire amount of overdue rent demanded by plaintiff, plus plaintiff's attorney fees. Their failure to suggest at that time that they were entitled to a three-month credit or abatement --- which, if true, would have meant that they were ahead rather than behind on their rent --- bolstered the Court's impression that the parties did not understand the lease agreement to provide for such a credit.[1]

In his closing argument counsel for defendant also raised another issue: the failure of plaintiff's demand letter to comply strictly with the provision of A.S.C.A. § 43.1406 that "[a] demand for possession or payment" must state, inter alia, "the amount due at the time of the demand." Although the demand letter in this case did state that "your

---

[1]    In any case, the April 1989 settlement appears to have been an accord and satisfaction which defendants were thenceforth estopped to contest. (Defendants, who are respectively a corporation engaged in extensive trans-national commerce and an apparently sophisticated businessman, have raised no suggestion that the April 1989 settlement was unconscionable or otherwise unenforceable.) By claiming a credit or abatement allegedly accruing in early 1988 as a defense to an action based on overdue rents for late 1989 and early 1990, defendants necessarily seek to undo the April 1989 settlement. In every month between that settlement and the onset of the present controversy --- May through September of 1989 --- defendants paid plaintiff exactly one month's rent. Their contention that they did not fall behind when they stopped paying in October, because they had really been three months ahead all along, is not based on anything that happened during those post-settlement months. Rather, it entails arguments about the pre-settlement rights and obligations of the parties, which defendants were entitled to believe had been resolved by the settlement.
    Even if the April 1989 agreement was for some reason not a binding accord and satisfaction, the defendants' conduct in paying the monthly rentals between May and September provides further evidence that the alleged three-month abatement was no part of the parties' original understanding, but was instead an afterthought designed to avoid the consequences of defendants' recent non-payment. Tenants do not generally pay their rent three months in advance without saying something about it at the time.

22

company KMST is now three months behind in payments of rentals to the Catholic Church," it did not state a dollar figure. Moreover, the letter did not contain "the address or a brief description of the premises," as also required by § 43.1406.

In its ruling from the bench, the Court observed that these deficiencies, had they been pointed out prior to trial, might have caused the Court to conclude that the summary eviction process was not available. The Court ruled, however, that the insufficiency of the demand letter was the sort of defense that should have been raised in defendants' answer or at the beginning of the trial. By letting the trial proceed without objection, the defendants waived any such objection.

Defendants now urge us to reconsider this ruling. They characterize the statutory requirements for the demand letter as jurisdictional, and correctly observe that the Court can and should notice the absence of jurisdiction at any time.

This argument fails for three reasons. In the first place, although defendants assert that the form and content of the demand letter are jurisdictional, they have advanced no reasons to support this assertion. The defense that a landlord did not notify tenants of the substance of his demand would seem to go to the merits of his claim for eviction rather than to the competence of the Court. Indeed, the defendants themselves argue that this defense was raised by their blanket allegation that "[t]he complaint fails to state a cause of action upon which relief can be granted." A defense of no cause of action has traditionally been regarded as a defense on the merits.

In any case, some prerequisites to the exercise of jurisdiction *can* be waived by the parties. The test is set forth in a recent decision of the Appellate Division:

> A party can generally waive the benefit of a limitation on jurisdiction that is clearly designed only for his own protection . . . . But when the limits of jurisdiction reflect a fundamental decision that certain kinds of questions should be resolved in another court or in some non-judicial forum . . . the court is bound by this allocation of decision making power even when the parties to a particular case would willingly submit to a different one.

23

*Pago Petroleum Products, Inc., v. American Samoa Power Authority*, 10 A.S.R.2d 75, 81 (1989).

The rules pertaining to the demand letter, like those having to do with service of process or with the exhaustion of some types of administrative remedies, seem designed not to allocate decision making power among tribunals or to ensure the existence of a case or controversy, but to protect a particular party. If so, they are presumably waiveable by that party. Entry of an appearance by counsel, the raising of defenses on the merits without objection to the Court's jurisdiction, and active participation in a trial on the merits would generally be regarded as a waiver of any waiveable jurisdictional defenses.

On a more fundamental level, defendant's argument that the Court was without jurisdiction to conduct the trial misconstrues the nature of the remedy provided by the summary eviction statute and its relation to the jurisdiction of the High Court. In providing a new summary process and specifying that this process was to be available only in certain cases, §§ 43.1401 et seq. did not purport to deprive the Court of its pre-existing general jurisdiction to issue injunctions and declaratory judgments and to award damages. The Court's exercise of this general jurisdiction, both before and after the enactment of the summary eviction statute in 1984, has frequently included orders that people wrongfully occupying premises should vacate such premises and/or pay damages grounded in tort or contract. *See generally* A.S.C.A. §§ 3.0101, 3.0208(a), 3.0208(b)(2), 43.1101 et seq., 43.1301 et seq.

The only important difference between a "summary" and a "non-summary" proceeding for eviction is that plaintiffs who qualify for the former sort of proceeding are ordinarily *entitled* to have trial within ten days.[2] The provision of such an entitlement in some cases need not be

---

[2] Another difference is that A.S.C.A. § 43.1402 inexplicably gives jurisdiction over summary eviction proceedings to the Trial Division, whereas other actions for the possession of land are brought in the Land and Titles Division. The only practical difference is that the present action was therefore styled "CA" for Civil Action, whereas a non-summary eviction proceeding would have been styled "LT" for Land and Titles.

All Justices and Judges of the High Court are qualified to sit in both the Trial and Land and Titles Divisions. The present three-judge panel is fully qualified as a panel of either division. Cases are rather frequently styled "CA" that should have been styled "LT" and vice versa; when this appears during the course of the litigation, the appropriate remedy is not to dismiss the case, but simply to give it a new number.

Since the only difference between a three-judge panel sitting as the Land and Titles Division and the same three judges sitting as the Trial Division is whether the case

construed as a prohibition against equally speedy trials in other cases, at least not when the Court and all parties are willing.

Assuming (but not deciding) that the requirements for a demand letter set forth in A.S.C.A. § 43.1406 are indeed jurisdictional, they can only deprive the Court of its jurisdiction to conduct a summary eviction proceeding under the terms of the statute. Further assuming that the demand letter in the case did not comply with the statute, it would appear that the Clerk of the High Court should not have set the present action for trial within the statutory ten-day period. Rather, he should have waited for defendants to answer and then for one of the parties to move for a trial date, or for the Court to assign the case for trial on its own motion.

It is important to notice, however, that the *only* respect in which the trial of the present action was "summary" --- the only way in which it differed from the trial of an ordinary civil action --- was that it was held sooner than would ordinarily have been the case. It is also important that shortly before the commencement of the trial (on March 5 at 9:00 a.m.), defendants filed their answer with the Clerk. At any time after the filing of the answer, with or without a request from either party, the Court was free to hold a trial *without* resort to the special statutory provision for summary proceedings. *See* Trial Court Rules of Civil Procedure, Rule 40.[3] Even if the demand letter was so deficient as to deprive the Court of the special jurisdiction granted by A.S.C.A. §§ 43.1401, therefore, the March 5 trial was a valid exercise of the Court's general jurisdiction.

---

is styled "CA" or "LT," a final decision by one division in a suit that should have been brought in another division is not subject to attack on jurisdictional grounds. Indeed, from time to time the Court hears cases in which some of the relief sought can only be granted by the Land and Titles Division and another part can only be granted by the Trial Division. This would appear to include eviction cases in which the plaintiff seeks both summary and non-summary remedies. *See, e.g., American Samoa Government v. Samoa Aviation, Inc.,* 11 A.S.R.2d 144 (1989).

Because we conclude that the relief granted in the present case should properly have been treated as an exercise of our general jurisdiction over cases involving the right to possession of land, we have assigned the case an LT number in place of its original CA number.

[3] Indeed, Rule 40 does not say in so many words that a case can be assigned for trial only after an answer has been filed. While it would be sloppy practice to proceed to trial in the absence of an answer, and to do so over the objection or without the knowledge of a party might deprive that party of due process of law, it is not clear that the outcome of such a trial would be subject to attack on jurisdictional grounds.

25

We hasten to add that jurisdiction is not everything. Courts ought not to do many of the things they have jurisdiction to do. To hold a trial only a few minutes after the filing of the answer, over the objection of a party or under equivalent circumstances (e.g., an absent defendant or one who is unrepresented by counsel and unfamiliar with Court procedures), would be fundamentally unfair. *Cf. Wray v. Wray*, 5 A.S.R.2d 34 (1987).

In the present case, however, there is no evidence that holding the trial on March 5 rather than, say, April 5 resulted in any surprise or other procedural unfairness to the defendant. Not only was no objection raised by defendant Jum or his counsel, but both appeared to be reasonably well prepared for trial. Counsel has not suggested any evidence or argument that was unavailable to defendants on March 5 but that might have become available had the trial been held later. Defendant Jum did request a few extra days so that he could attempt another discussion with the Bishop; the Court effectively granted this request by staying execution of its judgment for two weeks or until the ruling on a motion for reconsideration, whichever should be later. (As it turns out, the pendency of the present motion has caused the stay to remain in effect for 56 days, which is longer than an eviction under the general non-summary process might have taken.)

Nor do the arguable deficiencies in the demand letter --- the absence of a precise dollar figure and of a description of the premises --- suggest, on the facts of the present case, that eviction would be substantively unfair to the defendants. Defendant Jum knew exactly what premises were referred to in the letter, knew what the monthly rental was, and knew how to multiply by three. If the defendants were correct in their argument that the Court would have no jurisdiction to decide the case unless the demand letter stated certain terms in certain ways, then it would of course be irrelevant whether the absence of such terms was in fact prejudicial. Insofar as the case was within the scope of the Court's general jurisdiction, the demand letter is still important but for a different reason: it must be scrutinized to determine whether it gave defendants actual notice of what was being demanded and of the consequences of noncompliance. This it did.

In conclusion, the omission from the demand letter of a dollar figure and of a description of the premises may well have deprived plaintiff of its right to insist on a trial date within ten days of filing the complaint. It did not, however, deprive the Court of its general jurisdiction to decide cases concerning the right to possession of

26

property. The Court was free to hear such a case on the day of its choosing, at least in the absence of objection by either party.

One possible objection to the above analysis is that all of us --- the Court, the Clerk, the parties, their counsel --- were operating under the impression that this was indeed a summary proceeding, at least until after the close of evidence when somebody noticed the problems with the demand letter. For this reason, we would be inclined to grant a new trial if there appeared to be the slightest possibility that such a trial would result in a different outcome. We would do this not because we did not have jurisdiction to hear the case on March 5, but because the interests of justice would not be served by allowing a result to stand which might be attributable to confusion or even to undue haste.[4] The March 5 trial, however, was a fair one in which both parties thoroughly addressed the merits of the case. A new trial would appear certain to produce identical evidence, identical arguments, and an identical result.

Accordingly, the motion to reconsider is denied. The motion for a further stay of execution is also denied.

It is so ordered.

---

[4] *See, e.g., American Samoa Government v. Samoa Aviation, Inc.*, 11 A.S.R.2d 144, 154 (1989):

> In retrospect, this was not the sort of case that should have been tried ten days after it was filed. The purpose of summary eviction proceedings is to provide speedy relief for landowners against deadbeats and squatters who have no fairly arguable legal right to remain on the premises and who would otherwise take unfair advantage of the law's delay. This was clearly not such a case. The Court therefore puts counsel on notice that it will take the motion for new trial seriously, especially insofar as questions of law are concerned. Counsel are urged to provide such authorities to the Court as might have been provided at or before trial there had [sic] been more time.